JOHN S. VAN WINKLE

v.

JOHN OWEN, administrator of Richard Owen, THE EXECU-
TOR OF HENRY WEHLE and JOSEPH R. SMITH.

1. In the case of a bill in the nature of a bill of interpleader, which states
substantial grounds of equitable jurisdiction other than the mere fact that
there are conflicting claims set up to a fund in complainant's hands, it is not
necessary to allege in the bill, or to assert by affidavit, that the complainant
is indifferent between the contesting parties and does not collude with either.

2. Judgment was recovered against complainant in a New York court, and
afterwards suit was brought upon that judgment, and a judgment recovered
therein against complainant in a New Jersey court. The plaintiff's attorney
of record in the New York court had a lien upon it for costs and services
rendered therein, and after judgment recovered in New Jersey gave complain-
ant notice thereof.—*Held*, that complainant was entitled to have the New York
judgment satisfied of record and the claim of the New York attorney dis-
charged as a condition precedent to the payment of the New Jersey judgment.

On demurrer.

The case as made by the bill, and admitted by the demurrer,
is as follows: Richard Owen recovered judgment against the
complainant in the city court of New York city, on the 13th of
June, 1891, for $1,735.28 damages, and $182.07 costs. Richard
died intestate in 1892, and in January, 1893, letters of adminis-
tration upon his estate were granted by the surrogate's court of
New York to the defendant John Owen. In 1895, John Owen,
as administrator, commenced an action founded on that judg-
ment against complainant in the circuit court of the county of
Hudson, and judgment by default was rendered therein on the
3d of April, 1895, for $2,355.39, being the amount of debt,
costs and interest due on the New York judgment, and $31.47
costs. The attorney of record and counsel for Richard Owen,
in the suit in the court of New York, was one Henry Wehle,
who died after the recovery of the judgment testate of a will
by which the defendants Charles and Alexander Wehle and Gus-

Van Winkle v. Owen.

tave Behr were executors, and they, as such, after the entry of the judgment in the Hudson circuit court, notified complainant that they claimed a lien upon the judgment entered in the New York court, and any moneys to be paid thereon for fees, costs and expenses due to Henry Wehle, the attorney, in his lifetime, for his services, fees, costs and expenses in and about the prosecution and recovery of the said judgment, amounting to $1,182.07, and the further sum of $1,890.87, as the balance due from Richard Owen to Henry Wehle for his services rendered in other suits and matters, and that by an agreement between Richard Owen and Henry Wehle, Richard Owen agreed that Wehle should have and hold said judgment rendered against the complainant as security for his said debt, and that any moneys derived therefrom should be applied to the payment of all the moneys due from Richard Owen to Wehle.

In point of fact, Wehle did conduct the suit which resulted in the judgment in favor of Richard Owen against the complainant, and, by virtue of the laws of the state of New York, Wehle had a lien upon that judgment, or any moneys to be derived therefrom, for the payment of the sum of $1,182.07, and he also had a lien for the further sum of $1,890.87 by virtue of the contract made between Henry Wehle and Richard Owen above set forth; and those moneys are still due from the estate of Richard Owen to the estate of Wehle. The defendant Smith claims that the executors of Wehle have assigned to him their debt against Owen and their lien upon the judgment. The judgment in the city court of New York remains unsatisfied of record. Richard Owen, in his lifetime, obtained and took into his possession certain deeds, notes and other papers not enumerated, belonging to the complainant, and evidences of indebtedness due and owing to complainant, and other papers of value belonging to complainant; and Richard Owen, in his lifetime, or the defendant Owen, his administrator, since his death, collected and realized out of the documents so taken possession of a part—but what part or how much does not appear—of the moneys due from complainant to them, and no credit was given therefor in the judgment rendered in the Hudson circuit court; and the

complainant had no notice prior to the rendering of such judgment that any moneys were realized by Richard Owen or the defendants, as his administrators, upon any of the property of the complainant so in their possession. The executors of Henry Wehle and the said Joseph R. Smith, claiming to be their assignee, are all residents of the state of New York, and refuse to allow the judgment rendered in the city court of New York to be satisfied or discharged until their said lien has been fully paid and discharged; and complainant is unable under the laws of the state of New York to obtain such satisfaction, and he believes and charges that he will be liable to pay the same even if he should pay and satisfy the judgment in the Hudson circuit.

Complainant, after notice of the facts hereinbefore set forth, applied to the defendant John Owen and expressed himself as ready and willing to pay and satisfy the amount due on the Hudson circuit court judgment upon a return of his deeds and papers taken by Richard Owen, and upon the satisfaction of the lien or claim of the executors of Wehle, and the formal satisfaction of record of the New York judgment, and upon being released from the claim of Wehle's executors, which offer was declined by the defendant, and execution issued on the judgment, and a levy was made upon property of the complainant.

Complainant tenders himself ready and willing to pay whatever is actually due upon the judgment, after deducting and allowing the credit for such moneys as may have been realized by Richard Owen in his lifetime, or the defendant John Owen, as administrator, out of the complainant's property in the city of New York, upon being relieved of the claims of the executors of Wehle, deceased, and of their alleged assignee, Smith, and having the judgment there against him satisfied and discharged of record.

The prayer is that there may be an interpleader between the executors of Wehle and Smith, their alleged assignee, on the one part, and defendant Owen, as administrator, on the other; that an account may be had of the moneys collected by Richard Owen in his lifetime, or by John Owen, as administrator, out of the property of the complainant, and the same credited on the

judgment, and that the complainant shall be released and discharged from the claim of the executors of Wehle and Smith, and the judgment recovered in the city court of New York satisfied and discharged of record, and the deeds and other papers in the hands of Richard Owen at the time of his death may be delivered to him.

No affidavit of non-collusion and disinterestedness was annexed to the bill.

. *Mr. J. Frank Fort* and *Mr. George Biller*, in support of the demurrer.

*Mr. Frederic W. Ward*, in support of the bill.

PITNEY, V. C.

In answer to the objection taken by defendant that the bill is demurrable for want of the usual affidavit of non-collusion and disinterestedness required in a bill of interpleader, complainant answers that this is not a pure bill of interpleader, but is no more than a bill in the nature of a bill of interpleader, in that it contains other grounds for coming into a court of equity, and asks other relief than that of a pure interpleader; and, therefore, that such affidavit is neither proper nor necessary.

In this I think the complainant is right. The formal affidavit in question is not a statutory requisite, nor required by any standing rule of the court, but has been required by the courts to prevent the abuse of a bill of interpleader being used by a stakeholder in the interest of one or the other of the parties claiming the fund, who might for any reason prefer to have his claim passed upon by a court of equity rather than by a court of law.

For myself, I am unable to perceive any principle upon which the absence of the formal affidavit can be held cause for demurrer, if the bill itself contains the proper averment of fact, which the demurrer must admit. But the rule seems to be established, as contended for by the defendant, that the absence of the affidavit is a cause of demurrer. In the case in hand,

however, there is·in the bill no allegation of indifference or non-· collusion, and hence it fails as a pure interpleader.

A bill in the nature of an interpleader is one in which the complainant asks some relief over and above a mere injunction against suits by the contesting parties, and states facts which entitle him to such relief independent of the fact of the adverse claims of the several defendants. The books furnish numerous instances of such. *2 Dan. Ch. Pr. (5th ed.) 1571*, and cases cited; *Story Eq. Pl. (9th ed.) § 297 b*, and cases cited. In our own state we have several instances. *Aleck* v. *Jackson*, *4 Dick. Ch. Rep. 507*; *Illingworth* v. *Rowe*, *7 Dick. Ch. Rep. 360*;· are samples, and the opinion in the ·latter case refers to other cases illustrating the distinction between pure bills˙ of inter‐ pleader and bills in the nature of interpleader.

If the ˙complainant's bill duly states facts which entitle him to relief·independent of its interpleader aspect, then clearly no affidavit of indifference is necessary or proper. Such is the rule stated by Mr. Daniell (*2 Dan. Ch. Pr. (5th ed.) 1563*, citing *Vyvyan* v. *Vyvyan, 30 Beav. 65*), and this must be so upon principle.

This brings us to the merits of the bill. The complainant relies upon several distinct equities, each of which is met by the defendant in argument.

First, he alleges, and the demurrer. admits, that the executors of Wehle have·a lien upon the New York judgment, on account— *first*, of services actually rendered in the procurement of that judgment, including costs of the recovery and extra counsel fees and expenses; and *second*, by a parol assignment of .it by Richard Owen to Wehle to secure other moneys due from Richard Owen to Wehle, and that the executors of Wehle, or their assignee, Smith, threaten to use the New York judgment as a means of enforcing it, and that a payment to the sheriff of Hudson county, or to the attorney of the plaintiff in the Hud‐ son county judgment, resulting in a full satisfaction of .that judgment, will not relieve complainant from the judgment in New York, on which that judgment is based, and that he is enti‐

17

tled to have the New York judgment satisfied and the claim of Wehle's executors discharged before paying the money.

The defendant did not deny but that the complainant was entitled to be relieved from the effect of the New York judgment, but argued, upon general principles, that the New York judgment was absolutely destroyed and all remedy upon it taken away by merger in the New Jersey'judgment recovered upon it.

It.is neither necessary nor proper at this time to finally determine whether or not the defendant's contention in this respect is sound. It is sufficient to say that it is, at least, doubtful, and so appears from.the very authorities which he cites to support it.

Mr. Freeman (*Freem. Judg.* § *216*) says: "A judgment is extinguished when, being used as a cause of action, it grows into another judgment." And cites a number of American authorities in support of his text, some of which give countenance to the idea that where liens are acquired upon property by virtue of judgments recovered in one state and a subsequent suit is brought upon that judgment in a sister state, the judgment recovered therein destroys the first judgment to the extent of destroying all liens already acquired under it; but the learned author states that this doctrine is not universally admitted, and he says:

"Some American cases proceed upon.the theory that no merger can take place until some higher remedy or evidence is created; and deny that one judgment can merge into another of equal degree. On this ground the motion to enter satisfaction of a judgment because it had been recovered upon in another action was denied."

The authorities he cites are: *Weeks* v. *Pearson,* 5 N. H. 324; *Mumford* v. *Stocker,* 1 Cow. 178; *Andrews* v. *Smith,* 9 Wend. 53; *Griswold* v. *Hill,* 2 Paine C. C. 492. These cases all support the doctrine of the text just quoted. And to these may be added the case of *Jackson, ex dem. Sternberg,* v. *Shaffer, 11 Johns. 513.* There, a bond and warrant of attorney to confess judgment had been given in *quasi*-payment of a judgment already recovered, and judgment was afterwards entered on the bond and warrant of attorney, and it was held not to destroy the original judgment or its lien upon land, and a sale of land

under the original judgment, made after the entry of the judgment on the bond and warrant of attorney, was held by the supreme court of New York to pass the title to the land by virtue of the original lien of the first judgment. The only authority the other way in New York is a decision of Chancellor Walworth, without any discussion or citation of authorities, in *Purdy* v. *Doyle, 1 Paige 561.* I cannot think that learned judge intended to overrule the decision of the supreme court in *Den* v. *Shaffer,* and must take the law to be as therein declared.

Mr. Bigelow, in his book on *Estoppel (5th ed.) p. 104 ch. 3 § 2 ¶ 3,* points out the same doctrine; and in his note to *Story on Conflict of Laws (8th ed.) § 599 a,* says that

"it may be inconvenient that two judgments should subsist in the same state against the same persons on the same demand, but no such inconvenience can exist in the case of judgments rendered in different states, and there is no sufficient reason for the application of the purely technical doctrine of merger, subversive of substantial justice as it would be in such cases."

And he adds:

"Indeed, in view of the fact that one satisfaction would satisfy both judgments, there is little to be said in favor of the doctrine of merger, reasonable as that doctrine may be in ordinary cases by a second judgment obtained upon the first even in the same state."

And see *2 Black Judg. §§ 864, 1013.*

I think that Mr. Bigelow's criticism is just; and I am unable to see any reason in law or in public policy why, if A. recovers a judgment against B. in the State of New York and acquires a lien by virtue of it upon property insufficient to pay it, and immediately afterwards brings a suit on that judgment and recovers upon it in the State of New Jersey, he must, as a condition of recovering that judgment in New Jersey, lose his lien by virtue of his judgment in New York and all remedy thereunder.

It is to be observed that the distinction here is between having two valid judgments at the same time in two distinct jurisdictions, one founded upon the other, with a concurrent right to a remedy under each for the purpose of paying the amount due, not twice, but once, and the effect of the payment of the later

judgment upon the former judgment. . Undoubtedly, under ordinary circumstances in the case in hand, the payment of the judgment in New Jersey would be, in effect, the payment of the. judgment in New York. But that is not the question here. The question is whether or not the judgment in New York is, before the payment of the judgment in New Jersey, a valid existing judgment so that the attorney of record still has his lien upon it for the amount of his fees, costs and services. If it be such valid and existing judgment before the payment of the judgment in New Jersey, and the attorney of record has his lien upon it, it will. at once be seen that it is, at least, a matter of grave doubt whether the payment of the New Jersey judgment, after notice of the attorney's lien upon the New York judgment, will discharge that judgment and thus extinguish the lien.

But the defendant further contends that the executors of Wehle having remained quiet and failed to enforce their lien until after judgment was recovered in New Jersey, they must be presumed to have waived it, or, at least, lost it by their laches.

I am unable to see any force in this suggestion, or to observe any laches in their conduct. The bill does not disclose any failure on the part of the attorney to use diligence in the collection of the judgment in New York, and mere non-action there would not destroy his lien, and he was not bound to follow the defendant in New Jersey and sue here. It is difficult to see what duty was cast upon him to watch in all the courts of the different states in the Union for suits brought by the representative of Owen upon that judgment, in order to intervene in such suits. Nor is it perceived how the attorney, or his personal representative, could have intervened or done anything to prevent the suit being brought in New Jersey precisely as it was, or stop the recovery of judgment therein. Granting that the whole of the judgment was really due to the representatives of the attorney, still the action was properly brought in our court in the name of the personal representative of Owen, in whom was the legal title only. Hence, it follows plainly that, granting the lien, the suit brought by the representative of Owen was

Van Winkle v. Owen.

properly brought, but in equity it was brought really for the use of the representatives of Wehle, and they are in ample time if they give notice to the defendant before the money is paid.

It was further suggested that perhaps the complainant here, the defendant in the judgment, could relieve himself from all liability to the executors of Wehle by giving notice to them that he would pay the money into the Hudson county court, where the judgment was recovered, and let them apply to that court to pay the money out to them.

It is probable that such action would have been efficient to discharge the complainant herein, but he would not thereby obtain a discharge on the record of the New York judgment or a decree protecting him against further molestation by the executors of Wehle or their assignee under their claim. His defence against such action on their part would rest wholly upon matters *in pais*, and he would be compelled on his defence to prove by parol the fact that he gave them the notice before paying the money into court. I am unable to see that he is not entitled to the more perfect remedy of paying the money into the court of chancery, and having a decree of that court compelling the defendant Owen to completely discharge him as a condition to having the money.

But the further difficulty with defendant's argument is that, granting the general rules of law to be as stated by the defendant, the complainant in his bill, as I interpret it, states the law of New York to be otherwise, viz., that the New York judgment will, according to the law of New York, stand against him, notwithstanding payment of the judgment here, and that he will not only be unable to have it satisfied of record, but that he would be liable to be proceeded against under it by the executors of Wehle. Now this statement of the law of New York is a statement of a fact, and is admitted by the demurrer, for the statement of the law of a foreign state or country is a statement of fact, as I understand the rules of pleading.

But grant it to be otherwise, and grant that, independent of the existence of the lien upon the New York judgment in favor of the Wehle estate, which is admitted by the demurrer, the

complainant, upon going to New York with record proof of the payment and satisfaction of the New Jersey judgment, could, upon motion or other proceedings, have the New York judgment declared satisfied of record, yet it does appear, upon the admitted facts of the case, that there is danger that he would be unable to do that in the present case on account of the lien of Wehle's executor.  And granting that the law of New York, as stated by the bill, is erroneous, that the defendant's contention is right, and that, by the law of the land, applicable in New York and elsewhere, the New York judgment is merged in the New Jersey judgment, and can no longer be resorted to by the administrator of Owen, whether the New Jersey judgment is paid or not, still, the complainant is entitled to have that New York judgment satisfied and canceled of record, so that it shall no longer stand as an uncanceled judgment against him in New York city.  And it seems to me that the difficulty, to say the least, thrown in the way of having it so discharged of record, by the admitted lien upon it by the executors of Wehle, entitles him to have such cancellation a condition precedent to the payment of the money in this case.

For these reasons I think the bill in this aspect states a substantial equity.

The next ground of equity taken by the complainant is that Richard Owen, by means of the judgment in New York, became possessed of certain documents and evidences of debt belonging to complainant, and still holds the same, and on some of them has recovered and received certain moneys (amount and particulars not stated), and that complainant did not have notice of the receipt of these moneys until after the recovery of the judgment, so that he could not have set it up in defence.

The point taken by the defendant against this equity is that it is a matter of defence at law, and that it does not appear that the complainant was diligent to such a degree in ascertaining the facts as to give him a right in a court of equity to ask for relief against a judgment at law; the defendant's position being that in order to enable a defendant in a judgment to come into equity and get a new trial on discovery of facts available at law, he

Stockton v. North Jersey Street Ry. Co.

should free himself of all laches in the case, and show that it is too late to obtain relief at law.

I am inclined to think that this criticism is well taken. The statements of the bill in this behalf are very meagre and unsatisfactory; but the fact remains, and it is admitted by the demurrer, that some moneys have been received either by Richard Owen, in his lifetime, or by his administrator, the defendant, which in justice ought to have been credited on this judgment; and it is to be borne in mind that the particulars of the same are naturally in the defendants' and not complainant's knowledge.

But, over and above all that, the papers and documents which are in the hands of the administrator of Owen, or, as the bill alleges as to some of them, in the hands of the executors of Wehle, ought to be given up to the complainant upon the payment of the judgment; and he has a clear equity to have them so given up.

For these reasons I conclude that the bill discloses equities, and that the demurrer should be overruled.